**AKERMAN LLP**
Kanika D. Corley (State Bar No. 223607)
*kanika.corley@akerman.com*
601 West Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-63422

**THE NEW YORK TIMES COMPANY**
Al-Amyn Sumar (*admitted pro hac vice*)
*al-amyn.sumar@nytimes.com*
620 8th Avenue
New York, NY 10018
Telephone: (202) 862-7705
Facsimile: (212) 556-4634

Attorneys for Defendant
THE NEW YORK TIMES COMPANY

*(left margin vertical text:)* AKERMAN LLP  601 WEST FIFTH STREET, SUITE 300  LOS ANGELES, CALIFORNIA 90071  TEL.: (213) 688-9500 – FAX: (213) 627-6342

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA READE,<br><br>Plaintiff,<br><br>v.<br><br>THE NEW YORK TIMES COMPANY,<br><br>Defendant. | CASE NO. 2:22−CV−00543−WBS−KJN<br><br>**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**<br><br>Date:    June 27, 2022<br>Time:    1:30 pm<br>Crtrm.:  5 |

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

**AKERMAN LLP**

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Tara Reade's opposition brief only underscores the irremediable and fatal flaws in her lawsuit against The New York Times Company ("The Times"). She tries to avoid application of the anti-SLAPP law by claiming that this case—which seeks to hold a news organization liable for the contents of its reporting—"does not involve any First Amendment right to free speech." Dkt. 15 ("Pl. Opp.") at 9. She ignores the language of the anti-SLAPP law, the precedents that explain how the statute works, and common sense. She concedes that the law at the heart of her action, Civil Code § 1798.85, contains "no explicit enforcement mechanism," *id.* at 10, but nonetheless maintains that it creates a private right to sue. To make that case, however, she seriously misreads and cherry-picks from the statute's legislative history. Viewed clearly and fairly, the legislative record contains nothing even hinting at an intent to create a private right of action. Ms. Reade also misconstrues the word "intentionally" in the statute to mean merely a general intent to publish rather than a purposeful sharing of a social security number. Her reading of that word is implausible and also at odds with legislative history. And to the extent she claims The Times acted purposefully, her theory boils down to the baseless allegation that The Times acted "out of spite." *Id.* at 15.

Ms. Reade does no better in attempting to rehabilitate her other claims. She accepts that a public disclosure of private facts claim requires an "egregious breach of social norms," *id.* at 14, but offers no real explanation of why The Times's conduct met that high bar. She acknowledges that the tort applies only to intentional conduct, but again offers nothing more than conclusory and far-fetched allegations of intent. And her claim for negligence remains deficient in several respects. The Times respectfully asks that the Court strike her claims under the California anti-SLAPP statute or, alternatively, dismiss them with prejudice under Federal Rule 12(b)(6).[1]

---

[1] The Times also argued in its opening briefs that all of Ms. Reade's claims fail because the number on her ID card was, in fact, an old social security number. *See generally* Dkts. 10, 11. In response, Ms. Reade admits that she changed her social security number in 1998 but claims she changed it back in 2016. Dkt. 15 Ex. 3 ¶¶ 4-5. Though she has not amended her Complaint to include that allegation, at this stage, The Times does not challenge it.

1

CASE NO. CU22-086270
**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

63577703;1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## II.    ARGUMENT

A.    The Anti-SLAPP Statute Applies to Ms. Reade's Claims

Ms. Reade first attempts, unsuccessfully, to sidestep application of the anti-SLAPP law. She argues that because "[t]here is no constitutional right to publish social security numbers," this case does not implicate the First Amendment right to free speech and therefore does not trigger the protections of the anti-SLAPP statute. Pl. Opp. at 9.

Ms. Reade misunderstands how the anti-SLAPP law works. At the threshold stage, a defendant is not required to prove that the underlying conduct is constitutionally protected; its burden is to show only that the acts complained of were undertaken "in furtherance of" its right to free speech in connection with a public issue. *See City of Montebello v. Vasquez*, 1 Cal. 5th 409, 420 (2016). The California Supreme Court made this point clear in *Vasquez*:

> The Legislature did not limit the scope of the anti-SLAPP statute to activity protected by the constitutional rights of speech and petition. It went on to include "any act … *in furtherance* of" those rights. We must give meaning to this statutory term, under settled principles of statutory construction. The Legislature's directive that the anti-SLAPP statute is to be "construed broadly" so as to "encourage continued participation in matters of public significance" supports the view that statutory protection of acts "in furtherance" of the constitutional rights incorporated by section 425.16 may extend beyond the contours of the constitutional rights themselves.

*Id.* at 421 (citations omitted).

Thus, in determining whether a defendant's conduct constitutes "protected activity" under the anti-SLAPP law, courts "look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)." *Id.* at 422; *see also Wilson v. Cable News Network*, 7 Cal. 5th 871, 888 (2019) ("At [the first] stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected, not whether it has shown its acts are ultimately lawful." (citations omitted)). What Ms. Reade asks for—a rule that would require "the moving party to make a constitutional case in support of every anti-SLAPP motion"—"would be inconsistent with the Legislature's desire to establish an efficient screening mechanism for 'disposing

CASE NO. CU22-086270

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

63577703;1

1    of SLAPP's quickly and at minimal expense to taxpayers and litigants.'" *Vasquez*, 1 Cal. 5th at 422

2    (quoting *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002)).[2]

3            For the reasons laid out in The Times's Motion to Strike, this case easily comes within the

4    ambit of the anti-SLAPP law. *See* Dkt. 11 ("Def. Anti-SLAPP Br.") at 5. The acts complained of—

5    the allegedly unlawful publication of Ms. Reade's social security number—took place in the context

6    of a news story about an allegation of sexual assault by a U.S. presidential candidate. That kind of

7    reporting is the paradigmatic exercise of free speech rights, *id.* (citing *Sipple v. Found. for Nat'l*

8    *Progress*, 71 Cal. App. 4th 226, 240 (1999)), and the inclusion of the photo of Ms. Reade's old Senate

9    ID card—which partially shows what turned out to be the social security number—was clearly "in

10   furtherance" of those rights, *id.* (citing C.C.P. § 425.16(e)(3), (4)). The anti-SLAPP law therefore

11   applies, and Ms. Reade bears the burden to show a probability of prevailing. *Id.* at 4-5. As explained

12   in The Times's opening brief and below, that is not a burden she can meet.

13          B.      Ms. Reade Has No Claim Under § 1798.85

14          In her opposition Ms. Reade contends that § 1798.85(a)(1) both creates a private right of action

15   and requires only a general "intent to publish" a social security number. Pl. Opp. at 10-13. She is

16   wrong on both counts.

17          *First*, § 1798.85 contains no private right to sue. Ms. Reade concedes, as she must, that the

18   statute contains no "express language creating a private right of action." Pl. Opp. at 10. She nonetheless

19   attempts, in vain, to unearth such a right in the statute's legislative history. As she puts it, this history

20   reflects that lawmakers "assumed" the existence of a private right to sue. *Id.* Even if this were true, it

21   would be insufficient: as The Times has noted, the legislative history must contain a "<u>clear statement</u>

22   about an individual's right to sue under the statute." *Mayron v. Google LLC*, 54 Cal. App. 5th 566,

23   573 (2020) (emphasis added); *see* Def. Anti-SLAPP Br. at 6; Dkt. 10 ("Def. MTD Br.") at 5. In any

24   event, what the legislative history actually shows is that lawmakers knew the statute <u>did not</u> contain a

25   private right to sue. Ms. Reade seizes on one phrase—a suggestion in a legislative analysis that the

26

27          [2] The courts recognize an exception when the complained-of activity is "illegal as a matter of
     law." *Vasquez*, 1 Cal. 5th at 423. But the exception is narrow and inapplicable here: "The defendant
28   must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to
     defeat an anti-SLAPP motion at the first step." *Id.* at 424.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**
63577703;1

statute ought to provide for "costs and attorney fees to the prevailing plaintiff"—as evidence that

lawmakers already believed such a right existed. Pl. Opp. at 10. But she leaves out the all-important

context for those words:

> Having said the foregoing, the bill should have some terms explicitly defined, e.g., "security alert" and "security freeze." <u>Also the author may consider specific causes of action and monetary sanctions for violations.</u> Included in such sanctions should be costs and attorney fees to the prevailing plaintiff.

*See* Dkt. 15 Ex. 1 at 3 (also attached as Dkt. 12 ("Sumar Decl.") Ex. 9). In short, the author of the

analysis recognized that the statute contained no private cause of action and recommended that one be

added—<u>and</u> that it contain an attorneys' fees provision. No such provisions were ever added. This

passage doesn't validate Ms. Reade's position—it demolishes it.[3]

The lone judicial authority Ms. Reade offers in support of her position is an unpublished

Superior Court decision, and it does not help her. *See* Pl. Opp. at 11; Dkt. 15 Ex. 2. In that case,

*Skylight Advisors, LLC v. Does 1-25*, 20SMCV01175 (Sup. Ct. L.A. Cnty. May 24, 2021), the court

did not reach a final conclusion about whether § 1798.85 creates a private right of action; it essentially

deferred the question to a later stage in the proceedings because neither party had "provide[d] the

Court with the full legislative history." Dkt. 15 Ex. 2 at 13. At a minimum, then, the case is inapposite

because the parties here <u>have</u> supplied the Court with the relevant legislative history. To be clear,

however, *Skylight Advisors* erred in deferring this question: the burden to show a private right of action

rests with the party seeking to sue, and if it fails to carry that burden its lawsuit should be dismissed.

*See* Def. Anti-SLAPP Br. at 6 (citing *Spine & Neurosurgery Assocs. v. UnitedHealthcare Ins. Co.*,

2020 WL 903333, at *3 (E.D. Cal. Feb. 21, 2020); *San Diegans for Open Gov't v. Pub. Facilities Fin.*

*Auth. of City of San Diego*, 8 Cal. 5th 733, 739 (2019)); Def. MTD Br. at 5 (same).[4] And to the extent

---

[3] Ms. Reade also misinterprets other parts of the legislative history. She highlights a reference to the legislation as "a modest effort to allow the victim to assertively deal with the consequences of identity theft." Pl. Opp. at 10. But that statement was contained in the same analysis discussed above, which, again, recognized that the bill contained no individual right to sue. *See* Dkt. 15 Ex. 1 at 3. Ms. Reade also makes much of the fact that the bill did not have an estimated "Fiscal Effect," which in her view conclusively shows that lawmakers did not intend for the Attorney General to enforce the provision. Pl. Opp. at 11. But she does not actually explain why that inference must be drawn, nor does she address the fact that the Attorney General <u>has</u> enforced § 1798.85 through the Unfair Competition Law. *See* Sumar Decl. Ex. 12 (California AG complaint).

[4] *See also, e.g., Uriarte v. Bostic*, 2017 WL 2312084, at *8 (S.D. Cal. May 26, 2017) ("Defendants are correct that 'when neither the language nor the history of a statute indicates an intent

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

63577703;1

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    *Skylight Advisors* held that § 1798.85 contains a private right of action merely because the statute is

2    "remedial," Dkt. 15 Ex. 2 at 13, that too was a mistake. As noted, what is relevant under controlling

3    precedent is not the broad purpose of a statute but whether its text or legislative history evinces a

4    "clear" intent to create an individual right to sue. *See* Def. Anti-SLAPP Br. at 6-8; Def. MTD Br. at

5    4-7. Ms. Reade has not made—and cannot make—that showing.

6            *Second*, Ms. Reade misstates the intent requirement in § 1798.85(a)(1). In her view, the

7    statute—which prohibits one from "intentionally communicat[ing] or otherwise mak[ing] available [a

8    social security number] to the general public—requires only a general intent to publish something, not

9    the specific intent to communicate a social security number. Pl. Opp. at 12-13. She defends this reading

10   as "the most plausible" on the ground that it would make a defendant liable for "carelessly post[ing]

11   documents that include SSNs." *Id.* at 12.[5] In truth, this reading goes much further than that: it would

12   impose a form of strict liability on the defendant's dissemination of a social security number, no matter

13   how much care was exercised, as long as there was an intent to publish. And Ms. Reade provides no

14   good reason to think this was the Legislature's intention. To the contrary, as The Times noted in its

15   opening briefs, a key purpose of the law was to disincentivize the <u>purposeful</u> use of social security

16   numbers as identifiers by entities like health care providers, colleges, and banks in order to reduce the

17   risk of identity theft. *See* Def. Anti-SLAPP Br. at 8; Def. MTD Br. at 6; Sumar Decl. Ex. 8 at 3-4. The

18   legislative history does not suggest that lawmakers were concerned about the "careless[]" publication

19   of social security numbers.

20   _____

21   to create a new private right to sue, a party contending for judicial recognition of such a right bears a
     heavy, perhaps insurmountable, burden of persuasion.' Accordingly, in the absence of persuasive legal

22   authority or argument, Plaintiffs have not satisfied their burden of establishing that the [Meyers-
     Milias-Brown Act] provides a private right to sue for damages." (citations omitted)); *Vang v. Bd. of*

23   *Trs. of Cal. State Univ.*, 2020 WL 7396538, at *5 (Cal. Ct. App. Dec. 17, 2020, *opinion modified*, Jan.
     19, 2021) ("Here, the legislative history for the Donahoe Higher Education Act referred to by Vang in

24   his opposition to the demurrer does not refer to private enforcement of the statute. . . . Consequently,
     Vang has not carried his burden of persuasion on the question of whether the legislative history shows

25   the Legislature intended to create a private right of action."). The decision in *Vang* was not certified
     for publication or ordered published, but this Court may nonetheless rely on it. *See Villamizar v. Senior*

26   *Care Pharm. Servs.*, 2022 WL 755218, *4 n.1 (E.D. Cal. Feb. 7, 2022).

27       [5] Ms. Reade also defends this reading as consistent with the rest of the statute, *see* Pl. Opp. at
     12-13, but her reasoning is hard to understand. It was perfectly logical for the Legislature to prohibit

28   purposeful public display and private mailing of social security numbers. In both cases, the legislative
     goal is to deter entities from displaying or using those numbers in a way that heightens the risk for
     identity theft.

                                                                              CASE NO. CU22-086270
**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**
63577703;1

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    For the reasons given below and in The Times's opening briefs, Ms. Reade has not plausibly

2    alleged that The Times "intentionally" communicated her social security number. Her statutory claim

3    fails on this basis, too.

4    C.    Ms. Reade's Other Claims Fail as a Matter of Law

5    Ms. Reade fares no better in her attempt to save her claims for public disclosure of private facts

6    and negligence.

7    On the public disclosure claim, Ms. Reade offers no plausible basis to conclude that The

8    Times's conduct was sufficiently "offensive and objectionable" to the reasonable person. *See* Def.

9    Anti-SLAPP Br. at 10-11; Def. MTD Br. at 9. She does not dispute the standard on this element—*i.e.*,

10   that a defendant's conduct must amount to an "egregious breach of social norms," one that "shock[s]

11   the community's notions of decency." *See* Def. Anti-SLAPP Br. at 10-11; Def. MTD Br. at 9; Pl. Opp.

12   at 14. But she refuses to accept the legal proposition, found in no fewer than seven California federal

13   court decisions since 2012, that the "disclosure of personal information, including social security

14   numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of

15   privacy claim."[6] The fact that most of these decisions involved disclosure not of a social security

16   number but other kinds of sensitive information, *see* Pl. Opp. at 14, is of no moment; the point is that

17   social security numbers fall within a category of information whose disclosure does not give rise to a

18   publication of private facts claim.

19   Even if that were not true—if disclosure of a social security number could in some

20   circumstances be actionable as an invasion of privacy claim—Ms. Reade has identified nothing

21   plausibly "egregious" about The Times's conduct. For instance, she does not claim (in her Complaint

22   or opposition brief) that she alerted The Times to what was in the photo of the ID card when she

23   provided it, and she admits that The Times took down the photograph when she allegedly complained.

24

25

26   [6] *See* Def. Anti-SLAPP Br. at 11 (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *White v. SSA*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015); *Barry v. Wells Fargo Home Mortg.*, 2016 WL 4242237, at *4 (N.D. Cal. Nov. 12, 2021); *Mitchell v. Reg'l Serv. Corp.*, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014)); Def. MTD Br. at 10 (same); *accord Del Llano v. Vivint Solar Inc.*, 2018 WL 656094, at *5 (S.D. Cal. Feb. 1, 2018); *Bongiovanni v. State Farm Fin. Servs.*, 2015 WL 13916261, at *9 (C.D. Cal. July 22, 2015); *Belluomini v. CitiGroup, Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

63577703;1

1   Dkt. 1-1 ("Compl.") ¶ 15. In her opposition brief, Ms. Reade—pointing to a 2014 article in *The New*

2   *York Times* noting that "otherwise temperate people" can sometimes engage in "spiteful outbursts"—

3   speculates that The Times disclosed her social security number simply "out of spite." Pl. Opp. at 15.

4   But Ms. Reade identifies no reason why The Times would have harbored any animus towards her.

5   More to the point, she does not explain how her theory can be reconciled with the facts in the record—

6   specifically, The Times's publication of an even-handed and thoroughly reported account of her sexual

7   assault allegation, and its subsequent swift removal of the photograph. Ms. Reade's reflexive

8   invocation of Federal Rule 9(b), Pl. Opp. at 15, is simply not enough: "States of mind may be pleaded

9   generally, but a plaintiff still must point to details sufficient to render a claim plausible." Def. Anti-

10  SLAPP Br. at 9 (quoting *Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018

11  (N.D. Cal. 2017)); Def. MTD Br. at 8 (same).

12       Ms. Reade's claim for negligence is also doomed on several fronts. She fails to show, first, that

13  The Times owed her any legal duty of care. She matter-of-factly points to § 1798.85 as the source of

14  that duty. Pl. Opp. at 16-17. This is a newfound theory: her Complaint bases the negligence claim

15  solely on the alleged "duty to use reasonable care in the disclosure of private facts," Compl. ¶ 34, and

16  as The Times has pointed out, the California courts have rejected the notion that such a duty exists,

17  *see* Def. Anti-SLAPP Br. at 12-13; Def. MTD Br. at 11. But the more important point is that Ms.

18  Reade is wrong: § 1798.85 does not give rise to a duty of care. The mere fact that a statute prohibits

19  conduct does not mean it can be used as a vehicle for a negligence claim; the statute must instead

20  actually create a duty of care. *See, e.g.*, *Koo v. 210 E. Main*, 2021 WL 6882214, at *4 (C.D. Cal. Nov.

21  24, 2021) ("Plaintiff's negligence claim fails because Plaintiff does not allege any independent breach

22  of a duty of care by Defendant other than violations of the [Americans with Disabilities Act], Unruh

23  Act, and [Disabled Persons Act], which is insufficient to state a claim for negligence.") (citing *Strojnik*

24  *v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020)); *Cal. Serv.*

25  *Station Etc. Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1176 (1998) ("These [insurance-

26  related] statutes do not create a negligence duty of care. They prohibit misrepresentations, and are thus

27

28

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**
63577703;1

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    analogous to the torts of fraud and deceit, not the tort of negligence.").[7] On its face, § 1798.85 prohibits

2    intentional—not negligent—conduct, and nothing in the legislative history suggests that the intent was

3    to create a duty of care.[8]

4         Even if a duty of care existed, Ms. Reade has still not plausibly alleged breach—*i.e.*, that The

5    Times acted carelessly. She asserts that the social security number appeared on the ID card "in the

6    same fashion" as such numbers always do. Pl. Opp. at 17. But that claim is belied by photo of the ID

7    card itself: the social security number appears at the very bottom of the image with its lower half

8    cropped, none of the dashes visible, and no label or designation to identify the number. Sumar Decl.

9    Ex. 2. Put simply, the record before the Court does not permit a plausible inference that The Times

10   failed to act with due care.

11        Finally, it remains thoroughly implausible that Ms. Reade suffered any compensable harm.

12   Notably, in her opposition brief Ms. Reade narrows her damages to those for "emotional suffering,"

13   apparently accepting that the economic loss rule precludes all other kinds of damages (including, for

14   example, financial harm). *See* Pl. Opp. at 18. But as The Times has noted, the Complaint does not

15   adequately plead any type of damages, including those for emotional distress. *See* Def. Anti-SLAPP

16   Br. at 13-14; Def. MTD Br. at 12. The standard for emotional distress damages in particular is

---

[7] *See also Strojnik*, 436 F. Supp. 3d at 1344 ("Plaintiff provides no authority, nor is the Court aware of any, to show that Congress enacted the ADA as a separate duty of care to give rise to an independent negligence claim under state laws."); *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1255 (2011) ("Although the Tuckers argue a legal duty of care is imposed by these federal regulations, they do not cite any case holding that these regulations independently establish a negligence duty of care . . . . Further, the Tuckers do not cite, and we do not find, any language in any federal statute, or otherwise, showing a legislative intent to create a duty of care through the federal regulations on which they base their argument.").

[8] It may be that Ms. Reade intended to frame her argument as one of negligence *per se*, but that too would go nowhere. The doctrine may be used in certain cases to show a breach of duty, but it does not relieve a plaintiff of the obligation to show the existence of an independent duty of care. *See, e.g.*, *Diller v. Ditech Fin., LLC*, 2017 WL 2986247, at *3 (N.D. Cal. July 13, 2017) ("Plaintiff argues that defendants owed plaintiff a duty under the doctrine of negligence per se, based on defendants' alleged violation of certain provisions of the Real Estate Procedures Act. . . . However, negligence per se only 'delineates a specific manner, based upon statute or regulation, in which a *breach* of duty may be identified' but is 'irrelevant if no duty has first been established.'" (citations omitted)); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007) ("[The defendant's] failure to follow applicable operational policies or procedures did not give rise to a duty where none otherwise existed. . . . Although plaintiffs do not characterize their argument as such, their theory of liability is comparable to the theory of negligence per se. The negligence per se presumption, however, operates only to establish a lack of due care.. . . . For the presumption to come into play, 'either the courts or the Legislature must have created a duty of care.'" (citations omitted)).

8                                    CASE NO. CU22-086270
**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**

63577703;1

1    extremely high: recovery "is generally not available unless malice, breach of a fiduciary duty, physical

2    injury or impact, or some other unusually extreme or outrageous circumstance, can be shown." *Beatty*

3    *v. PHH Mortg. Corp.*, 2019 WL 6716295, at \*13 (N.D. Cal. Dec. 10, 2019); *see also, e.g.*, *Miranda v.*

4    *Field Asset Servs.*, 2013 WL 3283701, at \*5 (S.D. Cal. June 27, 2013); *Andre v. Superior Ct.*, 2 Cal.

5    App. 4th 11, 20 n.9 (1991) ("We note that this court has previously held that emotional distress

6    damages are not recoverable in a 'garden-variety negligence concepts' case." (quoting *Soto v. Royal*

7    *Globe Ins. Co.*, 184 Cal. App. 3d 420, 434 (1986))). Ms. Reade's purely conclusory allegations fall

8    well short of that high bar.

### III.    CONCLUSION

10    The Times respectfully requests that this Court strike Plaintiff's Complaint and award The

11    Times its mandatory fees and costs incurred in connection with the Motion to Strike, in an amount to

12    be determined by future motion. In the alternative, The Times asks that the Court dismiss the

13    Complaint with prejudice.

15    DATED: May 16, 2022                    **AKERMAN LLP**

17                                           By:  */s/ Al-Amyn Sumar*
18                                                Kanika D. Corley
                                                  Al-Amyn Sumar
19                                                Attorneys for Defendant
                                                  THE NEW YORK TIMES COMPANY

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**

63577703;1