UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TARA READE,<br><br>              Plaintiff,<br><br>     v.<br><br>THE NEW YORK TIMES COMPANY,<br><br>              Defendant. | No. 2:22-cv-00543 WBS KJN<br><br><br>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS AND SPECIAL<br>MOTION TO STRIKE |

----oo0oo----

Plaintiff Tara Reade brought this action against defendant The New York Times Company challenging the alleged publication of a photograph containing her Social Security number in defendant's newspaper, The New York Times (the "Times"). (See Compl. (Docket No. 1-1 at 5-9).) Plaintiff's complaint includes three claims under California law: (1) violation of California Civil Code § 1798.85, (2) public disclosure of private fact, and (3) negligence. Defendant now moves both to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and to strike them via special motion under California's anti-SLAPP

1

1  statute, Cal. Code Civ. P. § 425.16.  (See Mot. to Dismiss

2  (Docket No. 10); Mot. to Strike (Docket No. 11).)[1]

3  I.   Factual and Procedural Background[2]

4       During the 2020 United States presidential campaign,

5  plaintiff publicly accused then-candidate Joe Biden of having

6  sexually assaulted her in the 1990s, while plaintiff was working

7  at the United States Senate.  (See Compl. at ¶¶ 7-12.)  The Times

8  investigated plaintiff's allegations and, to corroborate them,

9  plaintiff provided the Times with a photograph of her federal

10  identification card from her time with the Senate.  (See id. at

11  ¶¶ 9-11.)  That ID card included what turned out to be the upper

12  portion of plaintiff's Social Security number.  (Id. at ¶ 12.)[3]

13       The Times published an article about plaintiff's

14  allegations in April of 2020, in which it included the photo of

15  her ID card, though plaintiff had not expressly given the Times

16  consent to publish the photo.  (Id. at ¶¶ 11-13.)  The Times

17  ───────────────────

18       [1]   Defendant's motions appear to be identical, except for
portions addressing the respective legal standards for a motion

19  to dismiss under Rule 12(b)(6) and for a special motion to strike
under the anti-SLAPP statute.  (See Mot. to Dismiss; Mot. to

20  Strike.)  Accordingly, except where relevant to the special
motion to strike, which as explained below has additional

21  requirements beyond those of a motion to dismiss, the court cites
to the motion to dismiss and not to the special motion to strike.

22
         [2]   All facts described in this section are as alleged in

23  plaintiff's complaint, except as otherwise noted.

24       [3]   Although the Complaint suggests the whole number was
visible, counsel for plaintiff acknowledged at oral argument that

25  this was not the case.  This is confirmed by the unredacted copy
of the image as it was provided to the Times, which has been

26  filed under seal, as well as a partially redacted version with
only the final four digits of the number visible, attached to

27  this Order as Exhibit A, pursuant to Local Rule 140(a)(iii) and

28  Federal Rule of Civil Procedure 5.2(a)(1).

1    removed the photo after roughly nine hours, after plaintiff

2    demanded its removal.  (Id. at ¶¶ 14-15.)  Plaintiff alleges that

3    the photo was viewed thousands or millions of times before it was

4    removed and that there have since been hundreds of attempts to

5    steal her identity using her Social Security number.  (Id. at

6    ¶¶ 15-16.)

7         Plaintiff alleges that defendant employs an extensive

8    editing process prior to publishing articles on the Times website

9    and that its publication of the photo in spite of this process

10   shows the publication of the photo was either intentional or

11   reckless.  (Id. at ¶¶ 18-19.)  She alleges that as a result of

12   the photo's publication, she has suffered financial and emotional

13   harm.  (Id. at ¶ 17.)  Plaintiff filed this action in the

14   Superior Court of the State of California, in and for the County

15   of Nevada, on February 22, 2022.  (Compl. (Docket No. 1-1 at 5).)

16   Defendant removed to this court on May 24, 2022.  (Notice of

17   Removal at 1 (Docket No. 1).)

18   II.  Discussion

19        A.   Motion to Dismiss

20        Federal Rule of Civil Procedure 12(b)(6) allows for

21   dismissal when the plaintiff's complaint fails to state a claim

22   upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

23   "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."

24   Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry

25   before the court is whether, accepting the allegations in the

26   complaint as true and drawing all reasonable inferences in the

27   plaintiff's favor, the complaint has alleged "sufficient facts

28   . . . to support a cognizable legal theory," id., and thereby

1    stated "a claim to relief that is plausible on its face," Bell
2    Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding
3    such a motion, all material allegations of the complaint are
4    accepted as true, as well as all reasonable inferences to be
5    drawn from them.  Id.

6         Courts are not, however, "required to accept as true
7    allegations that are merely conclusory, unwarranted deductions of
8    fact, or unreasonable inferences."  Sprewell v. Golden State
9    Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl., 550
10   U.S. at 555.  Accordingly, "for a complaint to survive a motion
11   to dismiss, the non-conclusory 'factual content,' and reasonable
12   inferences from that content, must be plausibly suggestive of a
13   claim entitling the plaintiff to relief."  Moss v. U.S. Secret
14   Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Ashcroft v.
15   Iqbal, 556 U.S. 662, 678 (2009)).

16        1.   California Civil Code § 1798.85

17        Plaintiff first alleges violation of § 1798.85 of the
18   California Civil Code, which in pertinent part provides that,
19   except under specified circumstances, "a person or entity may not
20   . . . [p]ublicly post or publicly display in any manner an
21   individual's social security number."  Cal. Civ. Code
22   § 1798.85(a)(1).  The statute defines "[p]ublicly post" and
23   "publicly display" to mean "to intentionally communicate or
24   otherwise make available to the general public."  Id.

25        Defendant seeks dismissal of plaintiff's § 1798.85
26   claim on the grounds that (1) the statute creates no private
27   right of action and, (2) even assuming it does, plaintiff
28   nonetheless fails to allege that defendant "intentionally"

4

communicated or displayed her Social Security number when
publishing the photo.  (Mot. to Dismiss at 11-16.)[4]

              a.   Existence of Private Right of Action

         "A violation of a state statute does not necessarily
give rise to a private cause of action."  Lu v. Hawaiian Gardens
Casino, Inc., 50 Cal. 4th 592, 596 (2010) (citation omitted).
"Whether a party has a right to sue depends on 'whether the
Legislature has manifested an intent to create such a private
cause of action under the statute.'"  Fresno Motors, LLC v.
Mercedes Benz USA, LLC, 771 F.3d 1119, 1132 (9th Cir. 2014)
(quoting Lu, 50 Cal. 4th at 596).  To find such a legislative
intent, courts must first look to the language of the statute and
then to its legislative history.  Id. (citing Lu, 50 Cal. 4th at
596); see San Diegans for Open Gov't v. Pub. Facilities Fin.
Auth. of City of San Diego, 8 Cal. 5th 733, 739 (2019).

         In examining the language of a statute, the court must
look for signals such as an "express[ ] state[ment] 'that a
person has or is liable for a cause of action for a particular
violation,'" "a remedy or means of enforcing its substantive
provisions," or other "obvious," "'clear, understandable, [and]
unmistakable terms which strongly and directly indicate' an

_____

    [4]    In its motions, defendant also argues that the Social
Security number depicted in the ID photo is not plaintiff's
current Social Security number, and that § 1798.85 only applies
to current Social Security numbers.  (Mot. to Dismiss at 14.)
However, in its reply defendant indicates that it no longer seeks
to pursue this argument in light of an affidavit from plaintiff
stating that the Social Security number is in fact current.
(Reply at 2 n.1 (Docket No. 16); see Reade Aff. (Docket No. 15-
3).)  Accordingly, the court will not address this asserted basis
for dismissal.

1   intent to create a private cause of action." <u>Fresno Motors</u>, 771

2   F.3d 1132-33 (quoting <u>Lu</u>, 50 Cal. 4th at 597).  Section 1798.85

3   does clearly state that a person or entity "may not" publicly

4   post or display an individual's Social Security number, but it

5   does not contain either any language establishing that

6   individuals whose Social Security numbers are publicly posted or

7   displayed have a cause of action against the offending party or

8   warning that persons who violate the statute are liable for a

9   cause of action based on the statute itself.  Nor does it contain

10  any language explaining what remedies would be available to a

11  plaintiff bringing suit for violation of the statute.  <u>See Lu</u>, 50

12  Cal. 4th at 597 (listing examples of statutory language courts

13  have found expressly create causes of action, none of which are

14  present in § 1798.85).

15      Because § 1798.85 contains no "obvious language"

16  indicating that cause of action exists, the court turns to

17  legislative history.  To demonstrate the existence of a cause of

18  action, the legislative history must offer a "clear indication

19  that the Legislature intended to create a private cause of action

20  under the statute." <u>Id.</u> at 600.

21      In support of her argument that the statute creates a

22  private right of action, plaintiff points to two portions of a

23  report on the law by the Assembly Committee on Banking and

24  Finance (Docket No. 15-1).[5]  She first points to the report's

25      [5]    Plaintiff has attached the report to her opposition.
26  Although not framed as such, the court construes this as a
    request for judicial notice of the statements contained in the
27  report.  So construed, plaintiff's request for judicial notice is
    granted.  Defendant does not contest that the statements are
28  authentic, <u>see</u> Fed. R. Evid. 201(b)(2); indeed, defendant seeks

1    statement that the law represents "a modest effort to allow the

2    victim to assertively deal with the consequences of identity

3    theft." (Id. at 3.)  Although this statement suggests the

4    Committee's view that the law could assist victims of identity

5    theft in addressing the effects of such theft, its meaning is

6    clarified when read in context with the second portion plaintiff

7    identifies.  There, the Committee recommends that the bill's

8    "author . . . consider specific causes of action and monetary

9    sanctions for violations" and that such sanctions include "costs

10   and attorney fees to the prevailing plaintiff." (Id.)  This

11   language makes plain the Committee's understanding that the

12   statute, as written, did not provide a cause of action for

13   violations, hence the Committee's recommendation that one or more

14   causes of action be added.  That recommendation was never

15   adopted.

16        In light of those statements, this court cannot

17   conclude that the report's vague reference to victims

18   "assertively deal[ing] with the consequences of identity theft"

19   constitutes a "clear indication that the Legislature intended to

20   create a private cause of action under the statute." Lu, 50 Cal.

21   4th at 600.  Likewise, that the report lists the statute's

22   projected "fiscal effect" as "None," (Docket No. 15-1 at 2),

23   provides too weak an inference of intent to create a cause of

24   action for the court to recognize one here.  Although plaintiff

25   judicial notice of the contents of the same document, (Docket No.

26   12-13).  Defendant's request, insofar as it seeks such notice, is
     granted.  Defendant's request is denied in all other respects,

27   however, as consideration of the other documents for which
     defendant seeks notice is unnecessary to the resolution of the

28   instant motions.

1   argues the lack of a projected fiscal impact indicates that the

2   legislature did not intend for the state Attorney General to

3   enforce the law, and that individuals whose Social Security

4   numbers are published therefore must be able to enforce the law

5   themselves, (Opp. at 11 (Docket No. 15)), this rationale is far

6   too speculative to represent a "clear indication" of legislative

7   intent.  Moreover, it appears that the Attorney General has

8   indeed sought to enforce this statute on at least one occasion,

9   via an action brought under California's Unfair Competition Law,

10  Cal. Bus. & Prof. Code § 17200, indicating that a means of

11  enforcing the law does in fact exist.  (See Docket No. 12-12.)[6]

12          Plaintiff also cites an unpublished California Superior

13  Court decision, Skylight Advisors, LLC v. Does 1-25, 20-SMC-cv-

14  01175, at 13 (Cal. Super. Ct. May 24, 2021) (Docket No. 15-2),

15  attached to her opposition, in arguing that a cause of action

16  exists.[7]  There, the court stated that, "[a]s a remedial statute,

17  the Court believes that there is a manifest intent to allow a

18  private right of action" in § 1798.85.  (Docket No. 15-2 at 13.)

19  However, that conclusion is expressly qualified by the court's

20  statement that "[n]o party provide[d] the Court with the full

21  legislative history, including what the Legislative Analyst or

22

23          [6]   Although not part of the Complaint, the court takes
    judicial notice of the fact that the state brought this claim, in
24  a case in the Superior Court of the State of California, in and
    for the County of Alameda, in January of 2014.  (See id.)
25

26          [7]   As with the legislative analysis of § 1798.85, the
    court construes this as a request for judicial notice of the
27  document's contents.  (See supra n.5.)  So construed, plaintiff's
    request for judicial notice is granted, as defendant does not
28  contest the document's authenticity.

                                    8

1   Counsel stated about [the existence of a] claim (if anything),"
2   and that "the Court [was] open to persuasion on this point at a
3   later stage of the proceedings, perhaps with a better recitation
4   of Legislative history." (Id. at 13-14.)  This discussion makes
5   clear that that court did not consider the legislative materials
6   that this court has reviewed.  Skylight Advisors is therefore
7   unpersuasive.

8          Accordingly, the court concludes that, based on the
9   statutory text and the legislative history identified by
10  plaintiff, § 1798.85 does not create a cause of action.  Accord
11  Fine v. Cambridge Int'l Sys., 12-cv-165 WQH (BGS), 2012 WL
12  2871656, at *5 (S.D. Cal. July 11, 2012) (citation omitted),
13  rev'd in part on other grounds, 584 F. App'x 695 (9th Cir. 2014);
14  see San Diegans for Open Gov't, 8 Cal. 5th at 739 ("The burden of
15  persuasion is with the party claiming a statutory right to sue.")
16  (citation omitted).  Plaintiff's § 1798.85 claim therefore cannot
17  succeed.

18              b.   Requisite Allegations of Intent

19          Even if a cause of action existed, plaintiff's claim
20  fails for another, independent reason.  Section 1798.85 includes
21  an intent component, prohibiting "person[s] or entit[ies]" from
22  "intentionally communicat[ing] or otherwise mak[ing] available to
23  the general public" another person's Social Security number.
24  Cal. Civ. Code § 1798.85(a)(1) (emphasis added).

25          As a threshold matter, the parties dispute whether the
26  provision requires general or specific intent -- in other words,
27  whether a person or entity violates the statute any time it
28  intentionally communicates material that happens to contain

9

1   another person's Social Security number, or whether the person or

2   entity must specifically intend to communicate the Social

3   Security number itself.  A plain reading of the statute

4   demonstrates that the latter interpretation is correct.  As

5   noted, the statute provides that "a person or entity may not

6   . . . [p]ublicly post or publicly display in any manner an

7   individual's social security number" and defines "[p]ublicly

8   post" and "publicly display" to mean "to intentionally

9   communicate or otherwise make available to the general public."

10   Cal. Civ. Code § 1798.85(a)(1).  Reading these provisions of the

11   statute together, it prohibits persons or entities from

12   "intentionally communicat[ing] or otherwise mak[ing] available to

13   the general public," "in any manner[,] an individual's social

14   security number."  Id.  The terms "communicate" and "make

15   available" apply directly to "an individual's social security

16   number," making clear that the intent requirement, which modifies

17   "communicate" and "make available," applies to disclosure of the

18   number itself.

19        The allegations in plaintiff's complaint relevant to

20   intent are that defendant (1) "has an extensive editing process

21   before publication on its website," making it "very unlikely that

22   the disclosure was inadvertent, as several people must have seen

23   the photo before it was published"; (2) "acted recklessly or

24   intentionally in disclosing Plaintiff's Social Security Number";

25   and, similarly, (3) "intentionally or recklessly violated

26   California law in publicly posting or displaying Plaintiff's

27   Social Security Number."  (Compl. at ¶¶ 18-19, 24.)

28        These allegations are insufficient to plausibly suggest

1   that defendant intentionally displayed plaintiff's Social

2   Security number when it chose to publish the photo of her ID.

3   The court has reviewed an unredacted image of the photo, which

4   the court has separately ordered to be sealed, and it is not at

5   all obvious that the number is in fact a Social Security number.[8]

6   Only the top half of the digits are visible at the bottom of the

7   image, and it is not even clear what numbers they are.  The two

8   dashes typically separating the digits are also absent from the

9   photo.  The mere fact that defendant has a practice of reviewing

10  photos before publishing them online does not plausibly suggest

11  that its inclusion of a portion of plaintiff's Social Security

12  number was intentional.  See Sprewell, 266 F.3d at 988 (courts

13  not "required to accept as true allegations that are merely . . .

14  unwarranted deductions of fact[ ] or unreasonable inferences").

15       Plaintiff's other allegations on this point are mere

16  conclusory statements that defendant acted either recklessly or

17  intentionally.  These allegations are unsupported by any factual

18  allegations -- other than the above-noted allegation regarding

19  defendant's editing process -- supporting an inference that the

20  inclusion of plaintiff's Social Security number was intentional.

21  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet

22  that a court must accept as true all of the allegations contained

23  in a complaint is inapplicable to legal conclusions.  Threadbare

24  recitals of the elements of a cause of action, supported by mere

25  conclusory statements, do not suffice.").

26       There is no suggestion as to how defendant would have

27

28       [8]   As noted, see supra n.3, a partially redacted copy of
    the image is attached at Exhibit A.

11

1  known that portions of what appear to be numbers on what was

2  represented to be plaintiff's identification badge as an employee

3  of the United States Senate were in fact her Social Security

4  number.  Moreover, the Complaint does not even definitively state

5  that defendant's publication of the Social Security number was,

6  in fact, <u>intentional</u>, but rather alleges that the publication may

7  instead have been reckless.  Because the statute specifies that

8  intentional display or dissemination is required, recklessness is

9  insufficient.

10      Because section 1798.85 does not create a cause of

11  action and, in any event, plaintiff fails to plausibly allege

12  that defendant's publication of her Social Security number was

13  intentional, plaintiff's first claim will be dismissed.

14          2.   <u>Public Disclosure of Private Fact</u>

15      To state a claim for public disclosure of private facts

16  under California law, a plaintiff must allege: "(1) public

17  disclosure (2) of a private fact (3) which would be offensive and

18  objectionable to the reasonable person and (4) which is not of

19  legitimate public concern."  <u>Shulman v. Grp. W Prods., Inc.</u>, 18

20  Cal. 4th 200, 214 (1998).  This type of claim arises from

21  California's common law right to privacy.  <u>See Diaz v. Oakland</u>

22  <u>Trib., Inc.</u>, 139 Cal. App. 3d 118, 125-26 (1st Dist. 1983); <u>see</u>

23  <u>also id.</u> at 125 n.10 (noting claim may also arise under

24  California Constitution's right to privacy) (citing Cal. Const.

25  Art. I, § 1).[9]  As the Ninth Circuit has noted regarding common

26

27          [9]   The other tort claims arising under the common law
right to privacy in California are "(1) intrusion upon
plaintiff's solitude or into his or her private affairs;
28  (2) 'false light' publicity; and (3) appropriation of plaintiff's

1   law privacy claims, although California courts "ha[ve] not

2   explicitly required a finding of intentional conduct as a

3   prerequisite for the cause of action to be asserted," they "have

4   yet to extend the cause of action to include accidental or

5   negligent conduct."  Ruiz v. Gap, Inc., 380 F. App'x 689, 692-93

6   (9th Cir. 2010).

7         Defendant argues that plaintiff fails to state a claim

8   because public disclosure of another's Social Security number is,

9   as a matter of law, not "offensive and objectionable to the

10  reasonable person," citing a series of cases from other district

11  courts in California.  (See Mot. to Dismiss at 17.)  These

12  decisions state that "[e]ven disclosure of personal information,

13  including social security numbers, does not constitute an

14  'egregious breach of the social norms' to establish an invasion

15  of privacy claim."  E.g., Low v. LinkedIn Corp., 900 F. Supp. 2d

16  1010, 1025 (N.D. Cal. 2012).  All appear to cite Ruiz v. Gap,

17  Inc., 540 F. Supp. 2d 1121 (N.D. Cal. 2008), aff'd, 380 F. App'x

18  689, for this proposition, or other decisions that did so.  See

19  Schmitt v. SN Servicing Corp., 21-cv-3355 WHO, 2021 WL 3493754,

20  at *7 (N.D. Cal. Aug. 9, 2021) (citing In re iPhone Application

21  Litig., 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), which relied

22  upon Ruiz); Low, 900 F. Supp. 2d at 1025 (citing Ruiz); White v.

23  Soc. Sec. Admin., 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015)

24  (citing Low and Ruiz); Del Llano v. Vivint Solar Inc., 17-cv-1429

25  AJB MDD, 2018 WL 656094, at *5 (S.D. Cal. Feb. 1, 2018) (citing

26  White); Barry v. Wells Fargo Home Mortg., 15-cv-4606 BLF, 2016 WL

27

28  name or likeness to the defendant's advantage."  Diaz, 139 Cal.
    App. 3d at 126 (citations omitted).

13

1  4242237, at *4 (N.D. Cal. Aug. 11, 2016) (citing <u>Low</u>);

2  <u>Bongiovanni v. State Farm Fin. Servs., F.S.B.</u>, 15-cv-556 MWF

3  (SSx), 2015 WL 13916261, at *9 (C.D. Cal. July 22, 2015) (citing

4  <u>Low</u>); <u>Mitchell v. Reg'l Serv. Corp.</u>, 13-cv-4212 JSW, 2014 WL

5  12607809, at *5 (N.D. Cal. Apr. 23, 2014) (citing <u>Low</u>);

6  <u>Belluomini v. Citigroup, Inc.</u>, 13-cv-1743 CRB, 2013 WL 3855589,

7  at *6 (N.D. Cal. July 24, 2013) (citing <u>Ruiz</u>).

8      The decision in <u>Ruiz</u> was based upon the peculiar facts

9  in that case, and the court there did not purport to hold that

10  disclosure of Social Security numbers may never form the basis

11  for public disclosure claims.  Although the cases following <u>Ruiz</u>

12  do not fully articulate the rationale for their conclusion that a

13  public disclosure claim may not be predicated simply upon

14  disclosure of a Social Security number, there is a sound

15  underlying reason to reach such a conclusion.  California courts

16  have frequently described the scope of the right of action for

17  public disclosure of private facts as protecting against

18  disclosure of "intimate details of [a] plaintiff's private life."

19  <u>Fellows v. Nat'l Enquirer, Inc.</u>, 42 Cal. 3d 234, 251 n.13 (1986)

20  (en banc); <u>Kapellas v. Kofman</u>, 1 Cal. 3d 20, 35 (1969) (en banc);

21  <u>Coverstone</u>, 38 Cal. 2d at 322-23; <u>see also, e.g.</u>, <u>Taus v. Loftus</u>,

22  40 Cal. 4th 683, 717-18 (2007) (right covers disclosure of

23  "sufficiently sensitive or intimate private fact[s]").

24      The history of this tort sheds light on its reach.  The

25  California Supreme Court has noted that California courts'

26  initial recognition of the tort stemmed from the Restatement of

27  Torts and from a seminal article on privacy law by Dean William

28  Prosser.  <u>Shulman</u>, 18 Cal. 4th at 214 (citing Restatement

14

1   (Second) of Torts § 652A-E (Am. Law Inst. 1977); William Prosser,

2   Privacy, 48 Cal. L. Rev. 381 (1960)); see Miller v. Nat'l

3   Broadcasting Co., 187 Cal. App. 3d 1463, 1482 (2d Dist. 1986)

4   ("The Prosser analysis has been widely adopted . . . . Recent

5   California decisions have also employed it.") (citing Prosser,

6   supra at 389).  Although the Restatement in relevant part refers

7   only to disclosure of "matter[s] concerning the private life of

8   another," Restatement (Second) § 652D, Prosser's article

9   identified the tort as "Public disclosure of embarrassing private

10  facts about the plaintiff."  Prosser, supra at 389, 392 (emphasis

11  added).  It went on to discuss the tort in depth, citing, as the

12  tort's basis, a variety of decisions involving dissemination of

13  scandalous stories or lurid details about individuals' private

14  lives that were likely to cause embarrassment.  Id. at 392-98

15  (collecting cases).[10]

16          One such early case addressed a challenge to a

17  magazine's publication of a photograph in which plaintiffs

18  alleged they were depicted in an "uncomplimentary pose" and that

19  their "right of privacy was thereby invaded and plaintiffs were

20  subjected to humiliation and annoyance."  Gill v. Hearst Pub.

21  Co., 40 Cal. 2d 224, 227 (1953) (en banc) (internal quotation

22  marks omitted).  The California Supreme Court, in reviewing a

23  dismissal of the plaintiffs' claim, concluded in pertinent part

24  that the image contained nothing "uncomplimentary or

25          [10]    See also id. at 397 ("The law of privacy is not
26  intended for the protection of any shrinking soul who is
    abnormally sensitive about . . . publicity.  It is quite a
27  different matter when the details of sexual relations are spread
    before the public gaze, or there is highly personal portrayal of
28  his intimate private characteristics or conduct.").

discreditable," distinguishing the case from others "where the
right of privacy has been enforced with regard to the publication
of a picture which was shocking, revolting or indecent in its
portrayal of the human body." Id. at 230-31.  Because the
disclosure in Gill did not rise to that level, it was
insufficient "to shock the ordinary sense of decency or
propriety" as was necessary to give rise to "an actionable
invasion of the right of privacy." Id. at 231.

California courts continue to speak of the tort in
terms of whether the private facts disclosed were embarrassing,
uncomplimentary, discreditable, indecent, derogatory, or
reprehensible.  See Forsher v. Bugliosi, 26 Cal. 3d 792, 808
(1980) (addressing invasion of privacy claim in which plaintiff
alleged "that private embarrassing facts about him were revealed
and that his personal character was thereby injured"); Diaz, 139
Cal. App. 3d at 125 (referring to privacy right at issue as "the
right to be free from public disclosure of private embarrassing
facts").

Courts in other jurisdictions have described the common
law public disclosure tort in a similar fashion.  See Cottrell v.
Smith, 299 Ga. 517, 532 (2016) (referring to tort as "public
disclosure of embarrassing private facts" and explaining, "[t]he
interest protected [by the tort] is that of reputation, with the
same overtones of mental distress that are present in libel and
slander") (citing Cabaniss v. Hipsley, 114 Ga. App. 367, 372-73
(1966), which likewise relied on Prosser's article); Busse v.
Motorola, Inc., 351 Ill. App. 3d 67, 72 (1st Dist. 2004) (public
disclosure tort applies to disclosure of individuals' private

16

1  conduct, such as "family problems, romantic interests, sex lives,

2  [and] health problems," but not of personal identifying

3  information) (citation omitted); see also Dept. of Labor v.

4  McConnell, 305 Ga. 812, 819 n.7 (2019) ("[T]he subject matter of

5  other cases involving this tort includes the disclosure of

6  extramarital affairs and the publication of a partially nude

7  photograph.") (citations omitted).

8          In sum, this court concludes that, under existing

9  California law, to state a claim for public disclosure of private

10  facts a plaintiff must allege disclosure not merely of facts she

11  would prefer to keep private, but rather of private facts that

12  rise to such a level as could be characterized as embarrassing in

13  nature, such as would adversely affect her personal or

14  professional reputation if disclosed.  Personal identifying

15  information such as a Social Security number, standing alone,

16  clearly does not qualify because it discloses nothing about the

17  individual's conduct or personal life that would adversely affect

18  her reputation if made known to others.[11]

19          Accordingly, because plaintiff's public disclosure

20  claim is predicated solely upon the alleged disclosure of her

21  Social Security number, that claim must fail.[12]

22  ─────────────────

23  [11]    In Re iPhone Application Litigation supports this
conclusion.  There the court held that disclosure of identifying

24  information contained in cell phones, including users' "unique
device identifier number, personal data, and geolocation

25  information," is not an "egregious breach of social norms."  844
F. Supp. 2d at 1063 (citing Folgelstrom v. Lamps Plus, Inc., 195

26  Cal. App. 4th 986, 992 (2d Dist. 2011)).  A Social Security

27  number is similar in its ability to identify and reveal basic
information about individuals.

28  [12]    Additionally, because the court has concluded that

17

1

### 3.   Negligence

2      In her claim for negligence, plaintiff alleges that

3 defendant's disclosure caused her "significant damages," and the

4 Complaint elsewhere clarifies that these consist of "financial

5 and emotional damages."  (Compl. at ¶¶ 24, 36.)  It is well

6 established, however, that plaintiffs may not recover damages

7 solely for economic losses in negligence claims.  See E. River

8 S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 874-76

9 (1986); Union Oil Co. v. Oppen, 501 F.2d 558, 563-64 (9th Cir.

10 1974); Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905, 915

11 (2022).

12      An exception to this rule may apply in rare cases where

13 there exists a "special relationship" between the parties.  S.

14 Cal. Gas Leak Cases, 7 Cal. 5th 391, 400 (2019).  However,

15 plaintiff has not alleged that a special relationship existed

16 between her and defendant, nor does precedent suggest that their

17 relationship would qualify.  See, e.g., J'Aire Corp. v. Gregory,

18 24 Cal. 3d 799, 804-05 (1979) (restaurant operator's contract to

19 renovate restaurant created special relationship with contractor,

20 thus allowing recovery for purely economic loss caused by

21 contractor's negligent failure to complete construction on time);

22 Biakanja v. Irving, 49 Cal. 2d 647, 650-51 (1958) (notary's

23 preparation of will created special relationship with plaintiff,

24 an intended beneficiary, such that plaintiff could recover for

25 notary's negligent omission from will of assets that would

26

27 plaintiff has failed to allege that defendant intentionally
disclosed her Social Security number, plaintiff's public
disclosure claim fails for this independent reason as well.  See

28 Ruiz, 380 F. App'x at 692-93.

1   otherwise have passed to plaintiff).

2          Precedent also establishes that allegations of

3   "increased risk of identity theft," standing alone, are

4   insufficient to show actual damages.  See Holly v. Alta Newport

5   Hosp., Inc., 2:19-cv-07496 ODW (MRWx), 2020 WL 6161457, at *4

6   (C.D. Cal. Oct. 21, 2020).  Although plaintiff alleges that there

7   have been attempts to steal her Social Security number since the

8   photo was published, she does not allege that her Social Security

9   number was actually stolen or that she suffered harm as a result.

10          To the extent that plaintiff seeks damages for

11  emotional harm based on negligence, the California Supreme Court

12  has stated that there generally "is no duty to avoid negligently

13  causing emotional distress to another."  See Potter v. Firestone

14  Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993).  Plaintiff,

15  however, points to the statement of a California Court of Appeal:

16          California courts have limited emotional suffering
            damages to cases involving either physical impact and
17          injury to plaintiff or intentional wrongdoing by
            defendant.  Damages for emotional suffering are
18          allowed when the tortfeasor's conduct, although
            negligent as a matter of law, contains elements of
19          intentional malfeasance or bad faith.

20  Quezada v. Hart, 67 Cal. App. 3d 754, 761 (2d Dist. 1977).

21          Relying on this "intentional wrongdoing" exception,

22  plaintiff argues that because defendant intentionally published

23  her Social Security number, she may recover in negligence for

24  emotional harm.  As explained above, however, the Complaint fails

25  to adequately allege that defendant's publication of plaintiff's

26  Social Security number was intentional.  Accordingly, the

27  exception identified in Quezada does not apply.  Moreover, the

28  court in Quezada cited no precedent in support of the existence

                                19

1   of this exception, and it is not clear that the exception remains
2   viable today.

3       Because plaintiff therefore cannot recover in
4   negligence for either type of alleged harm, her negligence claim
5   will be dismissed.

6       B.   Special Motion to Strike

7       Under California's Strategic Lawsuit Against Public
8   Participation ("anti-SLAPP") statute, a defendant in a civil
9   action may file a special motion to strike claims "arising from
10  any act of [the defendant] in furtherance of [the defendant's]
11  right of petition or free speech" under the United States or
12  California constitutions.  Cal. Code Civ. P. § 425.16(b)(1); see
13  Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,
14  890 F.3d 828, 832-33 (9th Cir. 2018).  The motion is available to
15  litigants proceeding in federal court.  Thomas v. Fry's Elecs.,
16  Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005).

17      "A court considering a motion to strike under the anti-
18  SLAPP statute must engage in a two-part inquiry."  Vess v. Ciba-
19  Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003).  The
20  defendant must first show "that the plaintiff's suit arises from
21  an act by the defendant made in connection with a public issue in
22  furtherance of the defendant's right to free speech under the
23  United States or California Constitution."  Batzel v. Smith, 333
24  F.3d 1018, 1024 (9th Cir. 2003), superseded in part by statute on
25  other grounds as stated in Breazeale v. Victim Servs., Inc., 878
26  F.3d 759, 766-67 (9th Cir. 2017).  "The burden then shifts to the
27  plaintiff," id., who "must show a reasonable probability of
28  prevailing in [her] claims for those claims to survive

20

dismissal." <u>Planned Parenthood</u>, 890 F.3d at 833 (quoting
<u>Metabolife Intern., Inc. v. Wornick</u>, 264 F.3d 832, 840 (9th Cir.
2001)) (internal quotation marks omitted).

Where an anti-SLAPP motion is made at the pleading
stage, challenging the legal sufficiency of a claim, the second
part of the analysis is identical to the analysis performed in
evaluating a motion to dismiss under Rule 12(b)(6).  <u>Id.</u> at 834.
Accordingly, where a court concludes that a plaintiff's complaint
fails to satisfy the 12(b)(6) standard, the only remaining
question is whether the suit arises from "an act by the defendant
made in connection with a public issue in furtherance of the
defendant's right to free speech."

Such an "act" includes, as relevant here, "any written
or oral statement or writing made in a place open to the public
or a public forum in connection with an issue of public interest"
and "any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of
free speech in connection with a public issue or an issue of
public interest."  Cal. Code Civ. P. § 425.16(e)(3)-(4).
"[P]ublic issues," in turn, include "statements concerning a
person or entity in the public eye" and "topic[s] of widespread,
public interest."  <u>Sarver v. Chartier</u>, 813 F.3d 891, 901 (9th
Cir. 2016) (citation and internal quotation marks omitted,
alteration adopted).  To be of "public interest," a topic must be
"of concern to a substantial number of people."  <u>Id.</u> (quoting
<u>Weinberg v. Feisel</u>, 110 Cal. App. 4th 1122, 1132 (3d Dist.
2003)).  The terms "public issue" and "public interest" must be
"construed . . . broadly in light of the statute's stated purpose

1  to encourage participation in matters of public importance or

2  consequence." Id. (citations omitted, alteration adopted).

3         The publication of the photo, which plaintiff

4  voluntarily provided to the newspaper that she knew intended to

5  write a story about her, was clearly done in connection with a

6  public issue in furtherance of the newspaper's constitutional

7  right to free speech.  California courts have on multiple

8  occasions held that similar conduct was in furtherance of

9  defendants' free speech rights.  See Taus, 40 Cal. 4th at 713

10 (journalistic investigation, writing, and publishing are conduct

11 in furtherance of free speech rights); Lieberman v. KCOP

12 Television, Inc., 110 Cal. App. 4th 156, 165-66 (2d Dist. 2003)

13 (newsgathering is conduct in furtherance of free speech rights).

14 Moreover, in the article in which the photo was published, the

15 Times was reporting on plaintiff's accusation that a leading

16 candidate for President of the United States had sexually

17 assaulted her.  Such an accusation would certainly have been of

18 interest to a substantial number of people.

19        Plaintiff argues that the article could have told the

20 story just as effectively without the photo or if the editors had

21 omitted the number segments from the bottom of it.  First, since

22 it was plaintiff who submitted the photo with the partial number

23 visible on the bottom to the Times, presumably she agreed that

24 both the photo and the numbers had some relevance to the article

25 in that they corroborated her claim that she had worked for the

26 Senate.  More importantly, the test is not whether the article

27 could have been written or presented differently, but rather only

28 whether the defendant has shown that its actions were "in

1    furtherance of" its constitutional right of free speech in

2    connection with a public issue.  Cal. Code Civ. P.

3    § 425.16(e)(4).   Defendant has met that burden.

4              IT IS THEREFORE ORDERED that defendant's Motion to

5    Dismiss (Docket No. 10) be, and the same hereby is, GRANTED.

6              AND IT IS FURTHER ORDERED that defendant's Special

7    Motion to Strike (Docket No. 11) be, and the same hereby is,

8    GRANTED.

9              Plaintiff has twenty days from the date of this Order

10   to file an amended complaint, if she can do so consistent with

11   this Order.

12   Dated:   June 30, 2022          WILLIAM B. SHUBB
                                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

