# Exhibit D

2022 WL 2108474 (D.C.Super.) (Trial Order)
Superior Court of the District of Columbia,
Civil Division.

Arya TOUFANIAN, Plaintiff,
v.
Taylor LORENZ, Defendant.

No. 2020 CA 35 B.
March 23, 2022.

### Order

Al-Amyn Sumar, Dana Green, David McCraw, al-amyn.sumar@nytimes.com, dana.green@nytimes.com, mccraw@nytimes.com, for defendant.

Todd E. Edelman, Associate Judge.

**\*1** This matter comes before the Court on Defendant Taylor Lorenz's Motion for Attorneys' Fees ("Defendant's Motion"), filed June 25, 2021. Defendant's Motion asks the Court to award Defendant $85,020 in attorneys' fees pursuant to the District of Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5504(a), and D.C. Superior Court Rule of Civil Procedure 54(d). Plaintiff filed his Opposition to Defendant's Motion for Attorneys' Fees on July 23, 2021.

### I. Background

Plaintiff brought suit against Defendant for tortious interference with his business, ImShmacked LLC, after Defendant published an article in *The New York Times* ("*The Times*") about the company and Plaintiff's management of it. *See* Def Mot. at 2; Pl. Decl. at 1. In general, the November 6, 2019 article "reported the allegations of college students claiming they had been duped out of hundreds of dollars by" Plaintiff's business, as well as "Plaintiff's alleged threatening, harassing, and intimidating responses" to those who challenged or criticized the business. May 27, 2021 Order at 1-2. Plaintiff's lawsuit alleged that in writing this article, Defendant intentionally interfered with his business endeavors. *See* Second Am Compl. at 18.

Defendant filed a Special Motion to Dismiss Pursuant to the D.C. Anti-SLAPP Act on February 5, 2020 and renewed the motion on November 6, 2020. On May 27, 2021, this Court issued an Order granting the Renewed Special Motion to Dismiss and allowing "Defendant [to] file a motion setting forth the basis of her claim for attorneys' fees and setting forth the amount of fees sought[.]" May 27, 2021 Order at 17. Defendant filed her Motion for Attorneys' Fees on June 25, 2021, to which Plaintiff filed an Opposition on July 23, 2021.

Throughout this litigation, Defendant has been represented by in-house counsel for *The Times:* Al-Amyn Sumar, lead counsel with 8 years of legal experience; David McGraw, Senior Vice President and Deputy General Counsel with nearly 30 years of legal experience; Dana Green, Senior Counsel with 11 years of legal experience; and Alexandra Settelmayer, the current First Amendment Fellow with nearly 4 years of legal experience. Sumar Decl. ¶¶ 1-2, 14-17. Altogether, the legal team spent an estimated total of approximately 200 hours on this case, including "corresponding with [Plaintiff] and his counsel, conferring with [Defendant] and her editors about the case, conducting legal research, drafting the briefs and other filings, and attending court hearings on [Defendant's] behalf." *Id.* ¶¶ 11-12. Based on the attorneys' expertise and experience, their hourly rates are $650 for Mr. McCraw, $450 for Ms. Green, and $400 for Mr. Sumar and Ms. Settelmayer. *Id.* ¶ 18. In sum, Defendant seeks $85,020 [1] in fees in accordance with her legal team's hourly rates and hours expended. *Id.* ¶¶ 19-20. In the alternative, Defendant seeks

$79,132.60 based on calculations from the "*Laffey* Matrix," which is "published by the Civil Division of the U.S. Attorney's Office (USAO) for the District of Columbia, [and which] designates a reasonable hourly rate for attorneys at varying levels of experience." *Id.* ¶¶ 21, 24-25.

## II. Legal Standards

### A. The Anti-SLAPP Act

***2** The District of Columbia's Anti-SLAPP Act (the "Act") seeks to protect defendants in lawsuits filed "to punish or prevent the expression of opposing points of view" because even meritless strategic lawsuits against public participation ("SLAPPs") can have a chilling effect. Order at 3, *TS Media, Inc., et al. v. Pub. Broad. Serv.*, No. 2018 CA 001247 B (D.C. Super. Ct. July 25, 2018) (quoting Committee Report on Bill 18-893 (Nov. 18, 2010) at 1 ("Committee Report")); *see* D.C. Code §§ 16-5501- 16-5505. The Act "incorporate[s] substantive rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP" in recognition of the fact that the defense of such lawsuits require a considerable "amount of money, time, and legal resources." Order at 3, *TS Media, Inc., et al.*, No. 2018 CA 001247 B.

The Act provides protection to SLAPP defendants by, *inter alia*, granting the trial court the authority to award the cost of litigation to the party that prevails on a special motion to dismiss under § 16-5502. *See* § 16-5504(a). "The court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 … the costs of litigation, including reasonable attorney fees." *Id.* "[A] successful movant under [the Anti-SLAPP Act] is entitled to reasonable attorney's fees in the ordinary course – *i.e.*, presumptively – unless special circumstances in the case make a fee award unjust." *Doe v. Burke*, 133 A.3d 569, 571 (D.C. 2016).

### B. Reasonableness of attorneys' fee awards

"To establish a reasonable fee, the judge must calculate a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services rendered." *Fred A. Smith Mgmt. Co. v. Cerpe*, 957 A.2d 907, 918 (D.C. 2008) (quotation and citation omitted). The onus is on counsel "to prove and establish the reasonableness of each dollar, each hour, above zero." *Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 993 (D.C. 2007) (quotation and citation omitted).

Because "[t]he essential goal in shifting fees … is to do rough justice, [and] not to achieve auditing perfection," "[t]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal quotation and citation omitted). "A review for 'reasonableness' is not *carte blanche* for micromanaging the practice of lawyers the court … has no reason to believe are padding their hours." *Tenants of 710 Jefferson St. v. D.C. Rental Hous. Comm'n*, 123 A.3d 170, 191 (D.C. 2015). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time" to determine the reasonableness of the award sought. *Fox*, 563 U.S. at 838.

## III. Analysis

With these standards in mind, the Court must analyze (i) whether there are "special circumstances" that make the award of attorneys' fees unjust in this case, and thus overcome the presumption that Defendant is entitled to fees, and (ii) if Defendant is entitled to fees, whether the fees sought are reasonable.

### A. Special circumstances

In his Opposition, Plaintiff asks the Court to either deny Defendant's Motion outright or award only a nominal amount, arguing (i) that Plaintiff is facing financial hardship that warrants leniency due to these "special circumstances," and (ii) that "Defendant's employer—not her—actually seeks the fees." Pl. Opp'n at 3-4.

#### i. Plaintiff's financial status

Plaintiff reports that he has suffered extreme financial hardship since the publication of *The Times* article underlying this lawsuit. *See* PL Decl. at 1. Plaintiff's business allegedly went from making approximately $28,000 per month to $0 per month after the article was published. *See id.* This loss of revenue, combined with the amount of debt Plaintiff claims to have, has reportedly forced Plaintiff to move back in with his father. *See id.* Plaintiff alleges that he has approximately $44,000 in assets and approximately $90,000 in debt. *See id.* Plaintiff claims that his dire financial situation is exacerbated by the fact that he is unemployed and has had difficulty finding a job both because of the COVID-19 pandemic and the damage the article has supposedly done to his reputation. *See id.* at 1-2. Plaintiff argues that the state of his finances is so grim that "[i]f [he is] required to post the full amount of attorneys' fees requested by Defendant, [he] will be forced to file bankruptcy." *Id.* at 3.

**\*3** Defendant cites several federal cases to support her request for an attorneys' fee award, none of which involve the Act, but instead "employ the same 'special circumstance' standard" in the context of civil rights litigation. Def. Mot. at 4 n. 1. *See Boos v. Barry*, 704 F. Supp. 5, 6-7 (D.D.C. 1989) ("Consequently, 'a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983))); *Thompson v. Sawyer*, 586 F. Supp. 635, 642 (D.D.C. 1984) (applying a standard under which "a party seeking to enforce the rights protected by the Civil Rights statutes, 'should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust.'" (quoting *Newman v. Biggie Bark Enters., Inc.*, 390 U. S. 400, 402 (1968))). In those cases, federal courts held that an inability to pay did not amount to a special circumstance warranting leniency in deciding whether to grant awards for fees and costs. *See Boos*, 704 F. Supp. at 8 ("The D.C. Circuit has given some meaning to the unjust circumstances exception. Cases in this circuit illustrate that whether it is just for the defendant to pay turns not on the defendant's ability to pay … but on the degree of participation by the plaintiff in the action and the relief that was secured."); *Thompson*, 586 F. Supp. at 642-43 ("There is no provision in any of the civil rights statutes for denying liability on the inability of the defendant to pay.... To allow [the intervenor] to escape liability because of its alleged inability to pay, would contravene the very purpose for which the fee shifting provision has been enacted."). However, Plaintiff cites several civil rights cases that *do* consider an inability to pay, if only under extreme circumstances. [2] *See* Pl. Opp'n at 4; *Cohen v. West Haven Bd. Of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980) ("Ordinarily the court would not focus exclusively on the financial condition of one party unless that party appeared to be in extremis ...."); *Vulcan Soc'y of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains*, 533 F. Supp. 1054, 1060 (S.D.N.Y. 1982) ("[A]bility to pay should only be given substantial weight in cases of real or extreme hardship."). Courts thus appear to be split as to whether financial inability to pay constitutes a special circumstance. *See SEIU Local 32BJ v. Preeminent Protective Servs.*, 415 F. Supp. 3d 29, 37 (D.D.C. 2019) (citing cases in the Seventh and Tenth Circuits that—unlike the Second Circuit—do not consider inability to pay).

Some courts have drawn a reasonable middle line, however. "Although costs are generally awarded as a matter of course, the … court has discretion in allowing, disallowing, or apportioning costs.... When a … court chooses to consider the unsuccessful party's financial hardship, 'it should require substantial documentation of a true inability to pay.'" *Guevara v. Chukewuemeka Onyewu*, 943 F. Supp. 2d 192, 195-96 (D.D.C. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000)); *see also Johnson v. Holway*, 522 F. Supp. 2d 12, 17 (D.D.C. 2007) ("[U]nsubstantiated assertions of financial hardship … are an insufficient basis on which to deny costs."). Plaintiff here alleges to be "insolvent even without the attorney fee award" and

predicts that if he were made to pay the full amount Defendant seeks to recover, it "would cause [him] to file bankruptcy." Pl. Opp'n at 4. Defendant correctly notes, however, that Plaintiff "has never provided evidence that he would be unable to pay a fee award ...." Def. Mot. at 4. To be sure, Plaintiff produced nothing in support of his claims of hardship other than a two-page Declaration lacking both in detail and substantiation; Plaintiff provides no tax, financial, or other records to support his claims. Plaintiff has not come close to providing "substantial documentation" of his inability to pay, and thus has not demonstrated that his financial status constitutes the type of "special circumstance" that overcomes the statutory presumption in favor of fee-shifting.

### ii. In-house counsel

**\*4** Plaintiff next argues that "the Court should deny the Motion altogether because Defendant has not actually incurred any fees and is not obligated to pay any fees." PL Opp'n at 4. Plaintiff contends that because *The Times*, and not Defendant, paid the legal fees sought, it is inappropriate for Defendant to now seek a windfall. *See id.* at 4-6.

In *Doe v. Burke*, 133 A.3d 569 (D.C. 2016), our Court of Appeals dealt with similar facts wherein the movant was represented *pro bono* by a public interest organization in an anti-SLAPP case. According to the Court of Appeals, it was "[im]material that [the movant's] attorneys … represented him *pro bono* before requesting fees on his behalf" and held that the movant was nevertheless entitled to attorneys' fees. *Id.* at 578-79 (citing *Blum v. Stenson*, 465 U. S. 886, 894 (1984) and *Link v. District of Columbia*, 650 A.2d 929, 934 (D.C. 1994)). Like the movant in Doe, Defendant was not personally charged for the cost of legal services. *See* Sumar Decl. at ¶ 5 (stating Plaintiff was informed that if the Court dismissed his claim under the Act, "the Court could require him to reimburse *The Times* for its attorneys' fees" (emphasis added)); Def. Ex. B at 1, 3, 5, 7 (identifying the client as "The New York Times Company"). But just because Defendant was not personally on the hook for the costs does not mean that the fees have been otherwise covered or that the defense against Plaintiff's SLAPP suit was free. Plaintiff seems to be under the mistaken impression that because the in-house legal team receives a salary from *The Times*, it incurred no costs in defending this case. As Defendant emphasizes, "this litigation has not been costless for The Times," and has in fact required Defendant's "attorneys … to expend significant time [approximately 200 hours in total] and resources that they would have spent on [other] matters." Def. Mot. at 6.

From a policy standpoint, the Court of Appeals has recognized that even where a movant has not personally incurred legal expenses in order to bring a case under a statute that provides for recovery of attorney fees, "if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere ...." *Link*, 650 A.2d 929, 934 (quoting *Hairston v. R&R Apartments*, 510 F.2d 1090, 1092 (7th Cir. 1975)). On this point, Plaintiff argues that "[t]his is not a situation … like in *Doe* where policy favors compensating a public interest firm for successfully litigating a case on a *pro bono*/contingent arrangement." Pl. Opp'n at 6. However, the same policy rationale justifies an award in this case. If Defendant were denied attorneys' fees, "the burden of the costs [would be] placed on *[The Times'* legal team]" and might serve to discourage future anti-SLAPP litigation—and encourage the filing of lawsuits that chill public participation— irrespective of the fact that *The Times* is not a public interest firm Such a result would fly in the face of the Act's purpose—to protect defendants in lawsuits filed "to punish or prevent the expression of opposing points of view" in the hopes of chilling speech. Order at 3, *TS Media, Inc., et al.*, No. 2018 CA 001247 B (quoting Committee Report at 1); *see also* Def. Mot. at 6 (noting "that a key purpose of the statute's fee provision is deterrence"). The interests served do not change depending on a movant's "choice of counsel." Def. Mot. at 6; *see Blum*, 465 U.S. at 895 ("In determining the amount of fees to be awarded, it is not legally relevant that plaintiffs' counsel … are employed by … a privately funded non-profit public interest law firm." (internal citation omitted) (alterations in original)). Both case law and the policy underlying the Act support an award of attorneys' fees to Defendant even though she was represented by her employer's in-house counsel. [3]

### B. Reasonableness of fees sought

**\*5** A party who is entitled to attorneys' fees shall be awarded an amount that is reasonable. D.C. Code § 16-5504(a). As noted *supra*, "[t]o establish a reasonable fee, the judge must calculate a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by the 'reasonable hourly rate for the services rendered.'" *Fred A. Smith Mgmt. Co.*, 957 A.2d at 918 (quoting *District of Columbia v. Jerry M.*, 580 A.2d 1270, 1281 (D.C. 1990)). The amount that results from this lodestar calculation is "presumed to be the reasonable fee to which counsel is entitled." *District of Columbia v. Patterson*, 667 A.2d 1338, 1343 (D.C. 1995) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (citations and quotations omitted)). The burden of proving the reasonableness of the amount sought is on the party seeking the fees. *See Lively*, 930 A.2d at 993. The fee-seeking party must show the reasonableness of both (i) the hours expended on the litigation and (ii) the hourly rate charged.

#### i. Hours expended

The number of hours "reasonably expended" depends on whether "billing judgment [was] exercised" and whether any of the expended hours were "excessive, redundant or otherwise unnecessary." *Henderson v. District of Columbia*, 493 A.2d 982, 999 (D.C. 1985) (citation and quotation omitted). Here, Defendant's legal team estimated that it spent 199.8 hours cumulatively on this matter. Sumar Decl. ¶ 12; Exs. A, B. The work done within those 200 hours was divided by the four members of the team over the course of a year and a half—from January 2020 to June 2021. *See* Ex. A. The team's time logs demonstrate just how time-consuming this matter was; among other things, Defendant's legal team drafted, edited, and filed seven briefs on four motions to dismiss; prepared for and delivered two oral arguments; and prepared and filed the Motion at issue. *See* Def. Mot. at 10; Ex. A.

In fact, the number of hours claimed by defense counsel appears to underestimate the true amount of time spent on this litigation. For one, in creating these time logs, the attorneys "tend[ed] to consistently log time expended on significant tasks … but [did so] inconsistently on smaller, day-to-day tasks." Sumar Decl. ¶ 8. Moreover, Mr. Sumar, lead counsel in this case, "round[ed] down the collective time to the whole hour" for all work done in 2020 and only "began recording time in six-minute increments" in "2021, upon realizing that [his] hours logged on the case had become substantial and that [he] was failing to accurately capture the full extent of that time." *Id.* ¶ 9. The attorneys' subject matter expertise also meant that they "did not need to expend significant time on background research, and their time logs reflect they recorded only hours on essential tasks ...." Def. Mot. at 10. Additionally, Defendant does not seek to recover fees for hours expended by three individuals who contributed to the team's work: "Scott Bailey, a paralegal at Ballard Spahr who assisted [the team] with filings, service, and other tasks; Chad Bowman, a partner at Ballard who briefly supervised [Mr. Sumar's] work on this case while [Mr. Sumar] was at the firm; and Alexandra Perloff-Giles, who was Ms. Settelmayer's predecessor as the First Amendment Fellow." Sumar Decl. ¶ 13. Given the circumstances, the estimated 199.8 hours expended on this matter is a sufficiently reasonable amount to be considered in the lodestar calculus.

#### ii. Hourly rate

In establishing that an hourly rate charged is reasonable, the party seeking attorneys' fees must shed light on: "[1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community." *Tenants of 710 Jefferson St.*, 123 A.3d at 181 (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). Here, as discussed *supra*, Defendant proffers that the team's general billing practice was to log the time spent on this case in six minute intervals, although they mostly logged more time-intensive tasks rather than more routine ones. The members of Defendant's legal team collectively share many years and much expertise in the field of media law. Mr. McCraw, an Albany Law School graduate, is the most experienced member of the team with "nearly thirty years of legal experience,

including over twenty as a full-time media lawyer" and a reputation as "one of the top media lawyers in the country." Sumar Decl. ¶ 15. Ms. Green is the second-most experienced member; after graduating from Columbia Law School, she was *The Times*' First Amendment Fellow and has since accumulated "eleven years of legal experience, including seven as a full-time media lawyer." *Id.* ¶ 16. Mr. Sumar, a Harvard Law graduate, was also once *The Times*' First Amendment Fellow and now has "nearly eight years of legal experience, including almost five as a full-time media lawyer." *Id.* ¶ 14. Finally, Ms. Settelmayer is a Columbia Law School graduate and is the current First Amendment Fellow, with approximately four years of experience in the legal field. *Id.* ¶ 17. It is based on counsel's "skill, experience, and reputation" that their hourly rates are as follows: $650 for Mr. McCraw, $450 for Ms. Green, and $400 for Mr. Sumar and Ms. Settelmayer. *Id.* ¶ 18.

***6** These rates appear to be reasonable given prevailing market rates. The *Laffey* Matrix is a fee matrix that is typically used as a "starting point" for calculating comparable rates. *DL v. District of Columbia*, 924 F.3d 585, 589 (D.C. Cir. 2019); *see, e.g., U.F. v. District of Columbia*, No. 19-2164 (BAH), 2020 U.S. Dist. LEXIS 144694, at *3-5 (D.D.C. Aug. 12, 2020). Here, the *Laffey* Matrix suggests rates that are only a slight downward deviation from the rates sought: $595 for Mr. McCraw, $433 for Ms. Green, $372 for Mr. Sumar, and $353 for Ms. Settelmayer.[4] Def. Mot. at 9; Ex. D. However, the *Laffey* Matrix is not necessarily determinative; courts have discretion to award rates that are reasonable. *See, e.g.,Hines v. District of Columbia*, No. 13-695 (JDB-AK), 2014 U.S. Dist. LEXIS 183296, at *14 (D.D.C. Feb. 21, 2014) ("Federal courts are not automatically required to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are reasonable and warranted."), *report and recommendation adopted*, No. 13-695 (JDB), 2014 U.S. Dist. LEXIS 183295 (D.D.C. Mar. 18, 2014). Defendant's attorneys focus on a complex field of law and have specialized experience of the type not easily captured by the factors comprising the *Laffey* calculation. The marginal difference between the rates sought and the ones suggested by the *Laffey* Matrix indicates that the market-based fees requested are, in fact, reasonable.

The reasonableness of the award sought is additionally bolstered by considering the rates applied by courts in similar litigation involving *The Times*' in-house counsel. Indeed, Mr. McCraw was involved in *N. Y. Times Co. v. CIA*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017), a FOIA case in which the District Court granted *The Times*' motion for attorneys' fees after finding that Mr. McCraw's $650 hourly rate and the junior attorneys' $400 hourly rate were reasonable. *See* Ex. C. Defendant's request in the present case closely mirrors the one made in *CIA*; yet again, Mr. McCraw's hourly rate is $650 and that of the junior attorneys (Mr. Sumar and Ms. Settelmayer) is $400, even though several years passed between that case and this one. As Ms. Green has several more years of experience than do the junior attorneys, it is reasonable that Defendant seeks a slightly higher rate of $450 for her work.

Lastly, the onus was on Plaintiff to "proffer specific countervailing evidence which demonstrates the existence of a defined submarket and the prevailing rates within that market" if he opposed the application of the rates proposed by Defendant. *Tenants of 710 Jefferson St.*, 123 A.3d at 186. Nowhere in his Opposition does Plaintiff challenge the reasonableness of the fees sought by Defendant. *See generally* Pl. Opp'n. Defendant has thus successfully demonstrated the reasonableness of the rates used by illustrating counsel's billing practices, the team's experience levels, and comparable rates in the community.

### IV. Conclusion

For the foregoing reasons, it is this 23rd day of March, 2022, hereby

ORDERED that Defendant's Motion for Attorneys' Fees is GRANTED; and it is

FURTHER ORDERED that Defendant is awarded from Plaintiff reasonable fees in the amount of $85,020.

<<signature>>

Todd E. Edelman

Associate Judge

(Signed in Chambers)

***Copies e-servedto:***

 **\*7**  Arya Toufanian

*Plaintiff*

mtoufani@gmail.com

Al-Amyn Sumar

Dana Green

David McCraw

*Counsel for Defendant*

al-amyn.sumar@nytimes.com

dana.green@nytimes.com

mccraw@nytimes.com

**Footnotes**

1   Plaintiff filed a Motion for New Trial on June 24, 2021, to which Defendant filed her Opposition on July 8, 2021. This Court denied the Motion on September 20, 2021. Defendant's Motion was filed before the resolution of the Motion for New Trial, and Defendant asserted that she would "make a supplemental request for attorneys' fees for the time expended on that motion once it ha[d] been resolved." Def. Mot. at 10 n.8. However, as of yet, Defendant has not filed any such supplemental request.

2   Plaintiff also cites *Nifakos v. Secy of Health & Human Servs*. No. 14-236V, 2020 U.S. Claims LEXIS 2190, at \*4 (Fed. Cl. Sept. 15, 2020) to show that the economic impact of COVID-19 "constitutes such a special circumstance." Pl. Opp'n at 3. *Nifakos*, however, does not support Plaintiff's proposition and in fact cuts against it. The Court of Federal Claims in *Nifakos* dealt with the plaintiff's motion for interim attorneys' fees and costs under the National Vaccine Injury Compensation Program. *Nifakos*, 2020 U.S. Claims LEXIS 2190, at \*2. In its assessment, the Court of Federal Claims "noted that due to the current Covid-19 pandemic, [it] understood some practitioners were currently experiencing financial hardship" and thus had difficulty paying for expert witnesses. *Id.* However, the Court of Federal Claims considered the pandemic-induced hardship alleged *by the movant* seeking the award and not by the respondent against whom the award would be issued. *Id.* at \*4.

| | |
|---|---|
| 3 | Plaintiff additionally posits that, because Defendant has no legal expenses, the award would ultimately serve not as compensatory damages but as punitive damages in violation of "Plaintiff's Fifth Amendment and/or Fourteenth Amendment rights to Due Process of Law." PL Opp'n at 6-7. However, because the analysis set forth above reveals that Defendant is entitled to attorneys' fees under the statute, the award of such fees does not represent punitive damages. |
| 4 | Defendant's representation about the amount of experience the legal team has is as of 2021. *See generally* Sumar Decl. (dated June 25, 2021). However, as of 2020, Mr. McCraw had 28 years of experience, Ms. Green had 10 years of experience, Mr. Sumar had 7 years of experience, and Ms. Settelmayer had 3 years of experience. *See id.* ¶¶ 14-17. Additionally, "[f]or simplicity, [Defendant] asks that [the 2019-2020] rates be applied to all hours logged by her attorneys during the litigation, even though most of the time was put in during the 2020-21 year, when the applicable rates were slightly higher ($388 for Mr. Sumar, $621 for Mr. McCraw, $452 for Ms. Green, and $369 for Ms. Settelmayer)." Def. Mot. at 9-10 n.6. |

**End of Document**       © 2022 Thomson Reuters. No claim to original U.S. Government Works.